**IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS AND CONDUCT, Complainant,**

v.

**Brett Ivan ANDERSON, Respondent.**

**No. 04–0935.**

Supreme Court of Iowa.

Oct. 6, 2004.

---

Norman G. Bastemeyer and David J. Grace, Des Moines, for complainant.

Brett I. Anderson, Des Moines, pro se.

CARTER, Justice.

This matter is before us on a review of the Grievance Commission's findings and recommendations for discipline based on several allegations of ethical misconduct against respondent attorney Brett Ivan Anderson by the Iowa Supreme Court Board of Professional Ethics and Conduct. Our review of the record convinces us that the findings of the Grievance Commission with respect to the alleged violations are supported by a convincing preponderance of the evidence. With respect to the Grievance Commission's recommendation of a suspension of respondent's license, we conclude that the seriousness of the unethical conduct that has been established warrants revocation of his license to practice law.

■ The initial complaint against respondent involved a transaction in which he represented a partnership known as Southern Manor Partners (Southern Manor) in an attempt to secure refinancing of the debt on their business property. In pursuing that effort, respondent successfully arranged for a refinancing loan to Southern Manor from Preferred Risk Insurance Company (Preferred Risk). The loan commitment was for the sum of $400,000 to be loaned at 9.5% interest with a 1% loan origination fee payable to Preferred Risk.

The closing documents that respondent presented to Southern Manor with respect to this transaction indicated that the loan proceeds would be reduced by a closing fee of $250, an attorney fee of $275, and a loan origination fee of $8000. The origination fee shown on the closing documents was twice the sum that had been negotiated with Preferred Risk, a fact not known by Southern Manor and not disclosed by respondent. Half of the $8000 origination fee paid by Southern Manor was remitted to Preferred Risk, and the other half was

divided equally between respondent and the real estate professional who had referred Southern Manor to respondent for assistance in obtaining the loan. The Grievance Commission found that the misrepresentation with respect to the amount of the origination fee constituted a violation of Disciplinary Rule 1–102(A) of the Iowa Code of Professional Responsibility for Lawyers (lawyer shall not engage in dishonest conduct).[1]

In subsequent litigation between the partners of Southern Manor, the facts involving the loan-origination fee transaction were discovered. That information led to the original complaint against respondent by the board of professional ethics and conduct. Later, other information revealed in the Southern Manor litigation indicated that respondent, on two occasions, had withdrawn funds for his personal use from an escrow account in which the proceeds of the Southern Manor refinancing loan had been deposited. These withdrawals consisted of $10,000 removed from the account on October 23, 1992, and $3500 removed from the account on December 16, 1992. Respondent later replaced these monies in the escrow account.

Southern Manor had entrusted respondent with check-writing authority in the administration of the escrow account. The ledger sheet that he maintained to show deposits and disbursements for the escrow account did not disclose the unauthorized withdrawals for his personal use. Upon learning of these events, the board of professional ethics and conduct amended its initial complaint against respondent to charge additional ethical violations based upon these unauthorized withdrawals and improper recordkeeping for the escrow account.

The Grievance Commission found that respondent's actions in withdrawing a portion of the escrow funds for his personal use constituted a violation of DR 1–102(A) (dishonest conduct). It further found that by not accurately reflecting the transactions in the records he kept for that account he violated DR 9–102(B)(3) (lawyer shall maintain record of all client funds in lawyer's possession).

■ In addition to the matters we have discussed, the board of professional ethics and conduct also alleged in its amended complaint that respondent had assisted a company known as Colonial House II in securing refinancing of its indebtedness and was entrusted with the escrow account in which the proceeds of that loan were deposited. The evidence presented in support of that allegation revealed that, in March of 1993, he withdrew $7500 from that account for his personal use and, in April 1993, withdrew an additional $1500 for that purpose. These amounts were later repaid to the escrow account by respondent. The commission found that respondent's actions in withdrawing these funds for his personal use constituted an additional violation of DR 1–102(A).

■ With regard to another transaction, the amended complaint alleged that respondent had undertaken the representation of an elderly man with respect to a dispute with a neighbor. The nature of this dispute is not entirely clear. The elderly gentleman died, and when his wife and daughter later inquired as to the status of respondent's efforts, he falsely represented the amount and nature of the work that he had done on the decedent's behalf. The commission found that respondent's conduct in this matter constituted a violation of the duty to accurately

1. Further references to the disciplinary rules contained in the Iowa Code of Professional Responsibility for Lawyers will designate the particular rule only as DR and number.

report the status of the work he had undertaken to perform.

■ The Grievance Commission recommended that respondent's license be suspended for sixty days. This court gives respectful consideration to the Grievance Commission's recommendation concerning the appropriate sanction. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Waples,* 677 N.W.2d 740, 743 (Iowa 2004). However, on review of that recommendation under Iowa Court Rule 35.10, "the supreme court may impose a lesser or greater sanction than the discipline recommended by the grievance commission."

■ Our views of professional standards as they relate to the protection of a client's funds are well known and of long-standing. We have observed in several cases that "it is almost axiomatic that the licenses of lawyers who convert funds entrusted to them should be revoked." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Irwin,* 679 N.W.2d 641, 644 (Iowa 2004); *accord Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Williams,* 675 N.W.2d 530, 533 (Iowa 2004); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Bell,* 650 N.W.2d 648, 652 (Iowa 2002); *Comm. on Prof'l Ethics & Conduct v. Ottesen,* 525 N.W.2d 865, 866 (Iowa 1994). Instances in which revocation has not been ordered for the taking of client's money or fiduciary funds have involved situations in which the attorney had a colorable future claim to the funds or did not take the funds for his own use. *See, e.g., Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Allen,* 586 N.W.2d 383, 391 (Iowa 1998); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Hansel,* 558 N.W.2d 186, 192 (Iowa 1997); *Comm. on Prof'l Ethics & Conduct v. Rauch,* 486 N.W.2d 39, 40 (Iowa 1992). We have not hesitated to follow this course in situations in which the embezzled funds have been returned prior to any

discovery by the client or third parties. *Comm. on Prof'l Ethics & Conduct v. Pappas,* 313 N.W.2d 532, 533–34 (Iowa 1981). Revocation of an offending attorney's license has been imposed in situations involving substantially smaller embezzlements than those that occurred in the present case. *See Comm. on Prof'l Ethics & Conduct v. Rowe,* 225 N.W.2d 103, 104 (Iowa 1975) ($1500 of funds recovered for client placed in attorney's personal checking account—license revoked). The situation involving respondent's conversion of client funds is aggravated by the other transaction in which he misstated the amount of the origination fee on the Preferred Risk loan and pocketed a portion of the overage. This was another act involving dishonesty. As we recognized in *Irwin,* 679 N.W.2d at 644, "dishonesty is a trait that should disqualify the dishonest person from the practice of law." Given the seriousness of the ethical violations that have been established by the evidence, we are satisfied that the only appropriate sanction is revocation of respondent's license to practice law.

For all of the reasons stated in this opinion, the license of respondent, Brett Ivan Anderson, is revoked effective with the filing of this opinion. Costs are assessed to respondent as provided in Iowa Court Rule 35.25(1).

**LICENSE REVOKED.**

All justices concur except WIGGINS, J., who takes no part.